STATE OF VERMONT

ENVIRONMENTAL COURT

}
In re: Appeal of LiCausi } Docket No. 203-11-98 Vtec
  (Crushed Rock, Inc. Conditional Use Permit Appeal) }    (on remand)
}

Decision and Order

Appellant[1] Gale LiCausi, originally appealed from a 1998 decision of the Zoning Board of Adjustment (ZBA) of the Town of Clarendon, granting a conditional use permit to Appellee-Applicants John A. Russell Corporation and Crushed Rock, Inc. for the construction and operation of an asphalt hot-mix batch plant in addition to the rock crushing equipment at Appellee-Applicant's existing stone and gravel quarry with access from Vermont Route 133 in Clarendon, Vermont. This Court's decision on the appeal was upheld in part by the Vermont Supreme Court, and remanded in part for further findings or to take further evidence as to the conditional use criterion dealing with the effect of the proposal on the character of the area. The task of this Court on remand, as described in an interim scheduling order, was to take any additional evidence (not already presented in the original hearings), as may be necessary to make supplementary findings regarding the cumulative effect of any noise or any other adverse environmental consequences of the proposed asphalt plant, when added to the existing noise or other adverse environmental consequences from the existing quarrying, gravel extraction, and rock crushing operations at the site. Appellant represented herself; Appellee-Applicant is represented by Edward

---

[1] Four other appellants withdrew or were dismissed from the appeal before the original hearing on the merits: Edward Norton, Eleanor Norton, John Cook and Patricia Cook. During the remand proceedings, Frank LiCausi was added and later withdrew; John Furneaux withdrew; Edward B. McCormack was dismissed; and Andrea McCormack, Eric Jensen and Lisa Chapman were allowed to remain on the service list as informational parties only.

1

V. Schweibert, Esq. and David L. Cleary.  The Town of Clarendon did not enter an appearance in this appeal, either in the original proceedings or on remand.

A supplementary evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, together with the hearing on the merits of the air permit appeal, Docket No. 91-6-04 Vtec.  The parties were given the opportunity to submit written requests for findings and memoranda of law.  Upon consideration of the evidence, the site visit taken in connection with the original appeal, and the written memoranda and proposed findings, the Court makes the following supplementary findings, incorporates the findings made in the 2001 decision in this matter, and in the November 1, 2005 decision in Docket No. 91-6-04, and concludes as follows.  Findings from the earlier decision and the air permit decision are reiterated in this decision only as necessary to understand the context of this supplementary decision on the cumulative effects on the character of the area.

The quarry owned and operated by Appellee-Applicant has access from Route 133 in the "Residential and Commercial" (also referred to as the "Residential/Commercial") zoning district of the Town of Clarendon.  It received conditional use approval in 1983 for the operation of a "gravel pit and stone quarry," and received an amended approval in 1986 to allow operation of stone crushing equipment at the gravel pit and quarry.

Section 4407(2) of Title 24 of the Vermont Statutes Annotated, as it existed as of the time of the application,[2] was incorporated by reference into §§245 and 423 of the Clarendon

---

[2]  The 2004 amendments to Chapter 117 recodified the minimum required conditional use standards in §4414(3)(A), and further defined the 'character of the area affected' as "defined by the purpose or purposes of the zoning district within which the project is located, and [the] specifically stated policies and standards of the municipal plan."  The statutory amendment is not to be applied retrospectively to a pending application.  Therefore the character of the area remains assessed as including the working landscape as the area currently exists, with all approved uses.   In connection with this

Zoning Regulations, and applies to the application on remand. It required that the proposed conditional use shall not adversely affect the five listed criteria, of which the "character of the area affected" is the only one at issue in the remanded proceedings.

Cumulative Effects on the Character of the Area Affected

Although provided for in the statute, 24 V.S.A. §4414(5) (2004), the Clarendon Zoning Regulations do not contain any performance standards for noise, odor, glare or other such standards. Therefore these issues only arise in the conditional use analysis as they may affect the character of the area.

We also note that evidence was presented that asphalt plants are located elsewhere in the state as near to residential areas as is proposed in the present case. This evidence is not material to whether this particular proposed asphalt plant meets the requirements of the Clarendon Zoning Regulations.

Noise[3]

Appellee-Applicant proposed to operate the asphalt hot-mix plant from 6:30 or 7 a.m. to 5:00 or 5:30 p.m. on weekdays, and from 9 a.m. to noon on Saturdays from May 1 through November 1[4]. The noise produced by the asphalt plant operation is proposed to

---

analysis, we note that the existing quarry and rock crushing operations hold conditional use approval and are not non-conforming uses in the district under the present zoning regulations.

[3] The correct term for measurement purposes is the sound produced by a source, as 'noise' is simply the term for unwanted sound. However, as it is noise that is referred to in regulatory documents, for consistency of discussion, we will use the term noise throughout.

[4] The Act 250 permit allows operation to November 30, but the conditional use materials, like the air permit materials, refer to the original application with a November 1 cutoff date.

be controlled by the use of well-designed quieter equipment; by placing earthen berms and vegetation between the source and the road and residences; and, regarding the truck backup beepers, by a circular drive pattern to reduce the occurrences of backing up, and by the use of backup beepers operated by sensors to operate only when an object is in their path, on all equipment for which they are allowed under federal law.

Noise attenuates as the distance from the source increases. The rock crushing equipment in the quarry produces noise at a level of 80 dBA at a distance of 50 feet. The asphalt hot-mix plant produces noise at a level of 60 to 65 dBA at a distance of 50 feet. Due largely to the traffic on Route 133, the ambient noise level without the operation of the equipment is approximately 40 dBA during the work day. The noise produced by the proposed asphalt hot-mix plant, either alone or in conjunction with the crusher equipment, will not exceed 70 dBA at any point on the property boundary, as required by the Act 250 permit, and will not exceed 50 dBA at any residence. The latter level meets US EPA standards and World Health Organization noise standards for effects on residences, although neither of those standards is applicable to or required to be met for this proposal.

The decibel level measurement of noise is on a logarithmic scale. A 10 dBA increase is perceived as a doubling of the noise level. A 3 or 4 dBA increase is barely noticeable; the Vermont Agency of Transportation, in analyzing roadway noise, considers an increase of less than nine dBA to be one of 'no impact.' For each doubling of the distance from the source, the noise level decreases by approximately 6 dBA. If two sources of a roughly equal decibel level are operating at the same time, the decibel level will rise by approximately 3 dBA. If two sources of different decibel levels are operating at the same time, the decibel level will not increase above that of the louder source.

Thus, because the crusher equipment is louder, the combined operation of the crusher equipment and the asphalt hot-mix plant (and the ambient noise level) will produce the same or nearly the same decibel level of noise as the crusher operating alone (with the ambient noise level), up to a three or four decibel level increase, depending on the

4

location of the measurement.

Appellee-Applicant ran extensive computer modeling of the noise predicted to be produced at each of 190 structures, including all the residences, in an extensive area around the site, based on the operation of the crusher, the on-site trucks, the asphalt plant, and the ambient noise on Route 133. The additional noise produced with the addition of the asphalt plant to the other noise sources ranges from zero to four dBA, which is a barely perceptible effect, if any at all. Thus, during the time the crushing equipment is authorized to operate, the proposed asphalt plant will have no material substantial cumulative adverse effect on the character of the area due to noise.

However, during the time periods during which the crushing equipment is <u>not</u> authorized to operate, the additional noise produced by the asphalt plant will constitute a material and substantial cumulative adverse effect on the character of the area, which otherwise would be entirely free of that type and level of noise before 8:00 a.m and after 3:00 p.m. on weekdays, and all weekend long, as the ambient noise level of Route 133 is approximately 20 to 25 dBA less than that produced by the operation of the asphalt plant. Accordingly, unlike the air permit, based on the evidence presented on remand, this conditional use standard requires the asphalt plant to be limited to the same hours[5] of operation as the crushing equipment.

<u>Odor</u>

As more fully described in the air permit decision, the asphalt hot-mix plant is

---

[5] The Court understands that the hot-mix asphalt business requires the mix to be supplied in a heated condition when loaded into trucks and transported to the job site. However, no evidence was provided to distinguish between the noise-generating features of the components of the plant, other than that the 'dryers' produce the most noise. If Appellee-Applicant wishes to apply for extended hours for some subset of the asphalt plant operation, or for some kind of heated storage of the material, that would have to be a new application for amendment of the present approval.

proposed to be operated with odor prevention techniques to allow it to meet the odor standards of no objectionable odors at the property boundary. The design of the plant minimizes fugitive emissions of odiferous chemicals. The plant will not use cutback or emulsified asphalt (mixed with volatile odiferous chemicals). The truck beds will use a citrus-based release agent rather than one composed of volatile petroleum compounds. The trucks will be covered, and are restricted from traveling too closely together (in convoys) as they leave the plant, which will minimize the concentration of odor on the roadways. If operated in accordance with the air permit it will meet all emission standards. Accordingly, the proposed asphalt plant will have no material substantial cumulative adverse effect on the character of the area due to odor or air emissions.

### Water and wildlife

The water used by the crushing and any washing operations is designed to flow to a sedimentation pond so that no sediment will reach the nearby river. That is unchanged by the addition of the asphalt plant. No additional impervious area or runoff is calculated to be produced by the paving of the on site roadways to reduce dust, as the unpaved but compacted areas used for roadways and parking and equipment operation are already treated as impervious areas for those calculations.

The wildlife in the area are acclimatized to the noise of the crushing plant and the noise and motion trucks and other equipment used in the quarry operations. Accordingly, the addition of the proposed asphalt plant will have no material substantial cumulative adverse effect on the area's water resources or wildlife, and therefore on the character of the area for these reasons.

### Safety of additional fuel on site

The proposed asphalt plant will require more petroleum storage tanks to be located on the site than for the crushing operation. The tanks are located in containment areas with

berms, large enough to contain any spill or complete rupture of the tank. Petroleum storage tanks are heavily regulated under state law and the proposed asphalt plant must meet those requirements and have a spill prevention plan and various emergency management plans in place. Accordingly, the proposed asphalt plant will have no material substantial cumulative adverse effect on the character of the area due to the additional petroleum products to be stored on site.

### Traffic

We note that the scope of the remand did not reopen the traffic criterion; we address traffic only to determine whether the traffic generated by the asphalt plant would have any cumulative adverse effect on the character of the area.

Because Appellee-Applicant is already limited to a maximum of 85 truck trips from the site, there will be no cumulative changes to the already-permitted traffic from the site resulting from the operation of the proposed asphalt hot-mix plant. The allowed number of trucks will either contain crushed rock or asphalt hot-mix product. Route 133 is operating at a volume-to-capacity ratio of 13%; the traffic from the facility (regardless of what the trucks are carrying) only raises that to 14%. The level of service at the intersection will remain at level-of-service B with the trucks, and is also unaffected by what the trucks are carrying.

Accordingly, as no changes are proposed to the amount or timing of allowed traffic leaving the facility, or changes to the hours or seasons of operation of the facility, the proposed asphalt hot mix plant will have no material substantial cumulative adverse effect on the character of the area due to traffic.

### Visual Appearance and Screening

The area of the site in which the proposed asphalt hot-mix plant is proposed to be located is proposed to be screened from nearby residences and from the road by existing

vegetation, by the construction of a berm, and by the planting of trees, as required by the Act 250 permit and the conditions imposed in this Court's 2001 decision. The fence that is required to be installed can be installed within the treeline so that it will not be visually obtrusive. The plant itself and the stack are required to be painted or otherwise coated in colors that will assist the plant to blend with the background of the hill and to minimize how noticeable it may be through the trees. The air permit strictly controls visual emissions from the plant.

The appearance of trucks, loaders and other equipment traveling in and out of, or on the site, will not be affected by the proposed asphalt plant as the same equipment and same number of trucks leaving the site will be associated with the operation.

Accordingly, the proposed asphalt hot mix plant will have no material substantial cumulative adverse effect on the character of the area due to its visual appearance.

Based on this analysis, and considering all the contested components of the potential cumulative adverse effects on the character of the area, the proposed asphalt hot-mix plant will not have a substantial and material adverse effect on the character of the area if the plant's hours of operation are reduced to that of the crusher equipment, as discussed above.

Motion to Compel, for Protective Order, and for Sanctions

In addition to the merits of this appeal, Appellee-Applicant moved for sanctions. Appellee-Applicant filed certain discovery requests and requests to admit that either were objected to or were not responded to, or were admitted at the hearing. Appellee-Applicant now seeks sanctions in the form of its costs of proving these ultimately uncontested facts. If the Court had been able to clearly lay out in a scheduling order the time frames for responding to the requests to admit, and the possible consequences of a failure to respond to the requests, and to rule on any opposition to the requested discovery, the Court would

8

have considered imposing such costs, as unrepresented litigants are subject to the same rules of procedure as are represented litigants. However, under the circumstances of this appeal, Appellee-Applicant's motion for sanctions is DENIED, with each party to bear its own costs.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that conditional use approval is GRANTED to Appellee-Applicant to construct and operate the proposed asphalt hot-mix plant at its site on Route 133 in Clarendon, subject to the conditions as stated in the 2001 decision, except that the following conditions are further amended as discussed in this decision:

Conditions 12 and 13 are hereby further amended as follows:

Appellee-Applicant shall not operate the asphalt hot-mix plant beyond the hours of operation allowed for the crushing equipment; that is, during six hours a day within the time period from 8:00 a.m. to 3:00 p.m. Monday through Friday, with no Saturday or Sunday operation. Nighttime operation is not allowed under the conditions of this permit.

Condition 17 is hereby amended to delete references to Saturday operation of the asphalt hot-mix plant.

Done at Berlin, Vermont, this 4th day of November, 2005.

_____
Merideth Wright
Environmental Judge